**[J-63-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 16 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered March 6, |
| | : | 2023, at No. 301 WDA 2022, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Fayette County entered March 7, |
| WILLIAM ALBERT ROBERTS, | : | 2022, at No. CP-26-CR-0001543- |
| | : | 2021. |
| Appellant | : | |
| | : | ARGUED: October 8, 2024 |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED: JANUARY 22, 2025**

SORNA[1] is a comprehensive regulatory scheme that our General Assembly enacted to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood."[2] In order to achieve its stated purpose, SORNA subjects sexual offenders to a multifaceted system of registration and verification requirements.[3] Failure to comply with any of these requirements constitutes a separate

---

[1] SORNA is the commonly used acronym for the "Sexual Offender Registration and Notification Act," 42 Pa.C.S. §§ 9799.11-9799.75.

[2] 42 Pa.C.S. § 9799.51(b)(1).

[3] *See*, *e.g.*, 42 Pa.C.S. § 9799.56(a)(2)(i-iii) (requiring sexual offenders to register with the Pennsylvania State Police any change in address, employment, or enrollment at an educational institution within three business days); *id.* § 9799.60(b) (mandating that (continued…)

criminal offense under 18 Pa.C.S. § 4915.2(a) (hereinafter, "failure to comply"). We granted *allocatur* in this case to determine whether, in order to convict a sexual offender of failure to comply, the Commonwealth must prove beyond a reasonable doubt that the sexual offender knew that he was required to register under SORNA, or whether the mere failure to register, itself, suffices to establish the *mens rea* for an offense under Section 4915.2. In light of our canons of statutory interpretation and the general culpability provisions set forth in our Crimes Code, we hold that the Commonwealth must prove that the offender knew of his SORNA obligations before he can be convicted of failing to comply with them. Here, however, the record demonstrates that William Roberts had that requisite knowledge, and we thus affirm.

On October 26, 2005, Roberts pleaded guilty to one count each of statutory sexual assault, sexual assault, corruption of the morals of a minor, and indecent assault.[4] On January 24, 2006, the trial court sentenced Roberts to one and one-half to three years in prison. As a consequence of his convictions and sentence, Roberts also was ordered to register as a sexual offender under the then-applicable sexual offender registration statute—Megan's Law III[5]—for the remainder of this life. Among other mandatory

_____

sexual offenders verify their residence with the Pennsylvania State Police at least once per year).

[4]     *See* 18 Pa.C.S. §§ 3122.1, 3124.1, 6301(a)(1)(i), and 3126(a)(1), respectively.

[5]     Pennsylvania's first version of Megan's Law was enacted by the General Assembly in 1995. Act of Oct. 24, 1995, P.L. 1079, No. 24 (Spec. Sess. No. 1) ("Megan's Law I") (repealed). In *Commonwealth v. Williams*, 733 A.2d 593, 601 (Pa. 1999), this Court found Megan's Law I to be, in part, unconstitutional. In response, the General Assembly replaced the unconstitutional scheme with Megan's Law II. *See* Act of May 10, 2000, P.L. 74, No. 18 (as amended, 42 Pa.C.S. §§ 9791-9799.9 (expired)). Four years later, the General Assembly passed Megan's Law III. Act of Nov. 24, 2004, P.L. 1243, No. 152. While Megan's Law III did not "completely repeal and replace Megan's Law II," it did make "significant changes" to it. *Commonwealth v. Derhammer*, 173 A.3d 723, 725 n.4 (Pa. 2017). Megan's Law III was in effect at the time of Roberts' sentencing. However, as discussed below, this Court subsequently invalidated Megan's Law III, holding that its (continued…)

responsibilities under Megan's Law III, Roberts annually was required to appear in person before the Pennsylvania State Police ("PSP") in order to verify his address and personal contact information and to be photographed.[6] If at any time Roberts changed residences, he was obliged under Megan's Law III to provide the PSP with his new address within ten days.[7]

In 2013, in *Commonwealth v. Neiman*,[8] this Court found that the manner in which the General Assembly passed Megan's Law III violated the Pennsylvania Constitution's single-subject provision[9] and struck the statute down in its entirety.[10] Nonetheless, before this Court's decision in *Neiman*, the General Assembly already had enacted SORNA to replace Megan's Law III.[11] SORNA formally took effect on December 20, 2012. Five years later, in *Commonwealth v. Muniz*, we struck down the initial version of SORNA, finding it to be an unconstitutional *ex post facto* law.[12] The General Assembly responded to our ruling by enacting a retooled version of SORNA. The new scheme bifurcated the

---

enactment violated the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution. *See Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013); *see also Commonwealth v. Muniz*, 164 A.3d 1189, 1197 (Pa. 2017). Megan's Law III eventually was replaced with SORNA. Act of Dec. 20, 2011, P.L. 446, No. 111, (as amended, 42 Pa.C.S. §§ 9799.11-9799.75).

[6]     *See* 42 Pa.C.S. § 9796(b) (effective 1/1/2006 to 2/20/2012).

[7]     *See* 42 Pa.C.S. § 9795.2(a)(2) (effective 5/23/2005 to 12/31/2006).

[8]     84 A.3d at 605, 613.

[9]     Article III, Section 3 of the Pennsylvania Constitution, entitled "Form of bills," states that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." PA. CONST. art. III, § 3.

[10] `    *Neiman*, 84 A.3d at 605, 616.

[11]     SORNA was enacted in an effort to comply with the federal Adam Walsh Child Protection and Safety Act of 2006. *See* 34 U.S.C. §§ 20901-20991.

[12]     164 A.3d at 1218.

law into two distinct subchapters: Subchapter H, which governs offenders whose triggering offenses occurred on or after December 20, 2012,[13] and Subchapter I, which governs those offenders whose sexual offenses were committed prior to that date.[14] Because Roberts' triggering offense occurred in 2005, he is subject to the terms and conditions of Subchapter I. Under that subchapter, Roberts' status as a lifetime reporter pursuant to Megan's Law III did not change.[15] And, as he previously was required to do under Megan's Law III, Roberts must report annually to the PSP in order to verify his address[16] and to "immediately" notify the PSP of any changes to that address.[17]

Following his release from prison, Roberts substantially complied with his mandated obligations. Roberts consistently appeared in person before the PSP and verified his address, updating it when necessary. Roberts' compliance continued up to, and including, 2019. That year, Roberts reported to the PSP multiple times. On March 21, 2019, Roberts appeared at a certified Mercer County reporting facility and provided the PSP with an address in Belle Vernon, Pennsylvania. Then, on April 16, 2019, Roberts appeared at a Washington County reporting location and informed the PSP that he had moved to a different residence in Belle Vernon, which was located at 207 Edith Street. Roberts appeared again on July 17, 2019, but he did not change or update his address. Thus, in 2020, Roberts' last verified residence was the Edith Street address.

---

[13]     *See* 42 Pa.C.S. § 9799.12 (defining a "sexually violent offense" for purposes of Subchapter H).

[14]     *See* 42 Pa.C.S. § 9799.53 (defining "sexually violent offense" for purposes of Subchapter I).

[15]     42 Pa.C.S. § 9799.55(b)(2)(i)(A).

[16]     *Id.* § 9799.60(b).

[17]     *Id.* § 9799.60(c).

At each appearance, including each of the 2019 appearances, Roberts was provided with a six-page document that outlined his specific obligations as a convicted sexual offender. The form expressly informed Roberts that, *inter alia*, he was required: (1) to register as a sexual offender with the PSP; (2) to provide the PSP with all information required by the governing law, including information pertaining to his address, place of employment, and enrollment at an educational facility; (3) to submit to photographing, DNA testing, and fingerprinting; and (4) to make in-person appearances to update the PSP with any changes to his address, employment, or education status. The form further instructed Roberts that, as a Tier III reporter, he was required to abide by the terms and conditions of SORNA for the remainder of his lifetime,[18] and that failure to comply with any aspect of his mandatory duties as a sexual offender constitutes a felony offense under the failure to comply statute, 18 Pa.C.S. § 4915.2. Roberts signed this form acknowledging that he read and understood its contents multiple times since his release from prison, including on March 25, 2015; November 19, 2015; March 21, 2019; March 26, 2019; April 16, 2019; and July 17, 2019. Roberts was given a copy of this signed paperwork after every appearance.

In a break from his previous efforts, Roberts stopped reporting in 2020. The PSP's sexual offender records indicated that Roberts did not make his required annual visit in 2020, nor did he provide any updates to his address or other personal information. By August, the PSP became concerned with Roberts' non-compliance and dispatched a PSP trooper to investigate whether Roberts still lived at his last reported address, 207 Edith Street in Belle Vernon. When the trooper arrived at that location, he walked up to the

---

[18] SORNA classifies sexual offenders into tiers based upon the highest graded offense of which they were convicted. *See* 42 Pa.C.S. § 9799.14(a). Having been convicted of sexual assault, 18 Pa.C.S. § 3124.1, Roberts is classified as a Tier III offender, 42 Pa.C.S. § 9799.14(d)(5), which requires lifetime compliance with SORNA. 42 Pa.C.S. § 9799.15(a)(3).

structure situated at that address, a double-wide trailer, and looked through a window. The trooper saw that the residence was empty of furnishings and was unoccupied.

Suspecting that Roberts no longer lived at his last reported address, and that he had failed to provide the PSP with an updated address as required by Subchapter I,[19] the PSP arrested Roberts and charged him with two counts of failure to comply.[20] Specifically, Roberts was charged with violating two different subsections of the failure to comply statute. Roberts was charged under Subsection 4915.2(a)(1) for failing to register, and under Subsection 4915.2(a)(2) for failing to verify his current residence and be photographed. At a subsequent jury trial on these charges, Roberts claimed that, as a part of his 2005 plea bargain, he had agreed only to a ten-year reporting term. Roberts insisted that, despite signing multiple forms, two of which dated back to 2015, clearly indicating that he had a lifetime obligation, no PSP trooper or representative ever informed him that he was a lifetime reporter or that he was required to continue to report after his alleged ten-year term had concluded. The jury convicted Roberts of both counts of failure to comply. The trial court proceeded to sentencing immediately after dismissing the jury and sentenced Roberts to five to ten years in prison.[21] Roberts appealed.

Before the Superior Court, Roberts challenged the sufficiency of the evidence offered against him by the Commonwealth. Roberts argued that the Commonwealth had failed to prove both that he was a lifetime registrant and that he had "knowingly" failed to register. The Superior Court affirmed Roberts' judgment of sentence in a unanimous, published opinion.[22] The panel first rejected Roberts' contention that the Commonwealth

---

[19]     *See* 42 Pa.C.S. § 9799.60(c).

[20]     *See* 18 Pa.C.S. § 4915.2.

[21]     The trial court imposed the prison term on the Subsection 4915.2(a)(1) count. The court levied no further penalty on the Subsection 4915.2(a)(2) count.

[22]     *Commonwealth v. Roberts*, 293 A.3d 1221 (Pa. Super. 2023).

failed to prove that he was a lifetime reporter, as the Commonwealth demonstrated that Roberts' sexual assault conviction, "as an operation of law,"[23] subjected him to a lifetime reporting obligation under Megan's Law III—the law in effect at the time of his sentencing—and that the obligation remained as Pennsylvania's sexual offender registration statutory scheme evolved over the years.[24]

Relevant to the instant dispute, the panel next found that the evidence also was sufficient to prove that Roberts knowingly failed to comply with his SORNA obligations in 2020. Roberts maintained that he did not know that he was required to comply with SORNA in 2020 because he believed that he only had to report for ten years, a term that he thought ended in 2019. The panel found this argument to be a misdirected attempt to have his version of events credited over that found by the jury. This, the panel explained, was "not the role of an appellate court."[25] The jury was "free to believe all, part, or none of the evidence,"[26] and presumably elected not to believe Roberts' testimony over and above the objective evidence demonstrating that he was subject to SORNA for his lifetime.

Regardless, the jury's credibility determinations and weighing of the facts were not before the court. Instead, the court explained, the issue at the heart of the case was "what, if anything, the Commonwealth failed to prove in its case-in-chief regarding Roberts' *mens rea*[?]"[27] Specifically, the question became whether the failure to comply statute requires the Commonwealth to prove that Roberts "knew of his lifelong-registration

---

[23]     *Id.* at 1224.

[24]     *Id.* at 1224-25.

[25]     *Id.* at 1225.

[26]     *Id.* (quoting *Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (*en banc*)).

[27]     *Id.*

requirement."[28]  The panel held that it did not.  Rather, the panel explained, "the crime occurred when (1) he 'knowingly' failed 'to register with the [PSP]', *i.e.*, within three days of changing his address, and (2) when he 'knowingly' failed 'to verify [his] residence or be photographed.'"[29]  Thus, according to the intermediate court, in order to violate the failure to comply statute, "a registrant must 'knowingly fail to register' or 'knowingly fail to verify.'"[30]  That person must "be aware that it is practically certain he will fail to report and to verify with the [PSP] if he fails to do so.  The *mens rea* is simply that the *actus reus* of failure be committed knowingly."[31]  This means, in most cases, that a person knowingly violates the statute merely by failing to appear, as "a rational actor knows when he fails to do something."[32]  According to the Superior Court, the only possible exceptions "would be in cases where a registrant has dementia, is in a coma, or suffers from a similar mental incapacity."[33]

To the panel, the reason for an offender's non-compliance is "irrelevant"[34] to the inquiry of whether that offender *knowingly* failed to appear.  This is because, under the court's construction of the statute, an offender only must know that he did not appear before the PSP—the Commonwealth is under no statutory obligation to prove that the offender knew that he was required to appear in the first place.  The panel held that,

---

[28]     *Id.*

[29]     *Id.* (quoting 18 Pa.C.S. § 4915.2(a)(1), (2)).

[30]     *Id.* (quoting 18 Pa.C.S. § 4915.2(a)(1), (2)).

[31]     *Id.*

[32]     *Id.*

[33]     *Id.*  Notably, the panel did not cite any portion of the statute from which this limited range of potential exceptions purportedly arose.

[34]     *Id.*

because "ignorance of the law is no excuse,"[35] Roberts "may not excuse noncompliance with SORNA based on alleged ignorance of his lifetime-registration obligation."[36]

Roberts filed a petition for allowance of appeal with this Court, which we granted in order to address the following question:

> Is the evidence insufficient to convict a person for failure to register under SORNA when the Commonwealth fails to prove that the defendant knew of and was [non-compliant] with his registration obligations, or as the Superior Court held, [does] the Commonwealth need only [to] prove that the person knew he did not register, even if he had no knowledge that he was required to do so?[37]

Roberts argues that the Superior Court's interpretation of the failure to comply statute contravenes the plain text of 18 Pa.C.S. § 4915.2(a)(1) and (a)(2). By finding that the crime is completed when the sexual offender fails to appear, regardless of whether the offender knew that he was required to appear, Roberts argues that the Superior Court transformed the crime from knowledge-based into a strict liability offense.[38] In Roberts' view, the statutory text is unambiguous. Subsection (a)(1) of the statute requires proof that the sexual offender "knowingly fails" to register "as required under 42 Pa.C.S. § 9799.56 (relating to registration procedures and applicability)."[39] Similarly, Subsection (a)(2) requires proof that the sexual offender "knowingly fails" to verify his or her residence or to be photographed "as required under 42 Pa.C.S. § 9799.60 (relating to verification of residence)."[40] According to Roberts, the *mens rea*—knowledge—applies not just to a

---

[35]    *Id.* at 1226 (quoting *Commonwealth v. Krastas*, 764 A.2d 20, 30 (Pa. 2001)).

[36]    *Id.*

[37]    *Commonwealth v. Roberts*, 304 A.3d 329 (Pa. 2023) (*per curiam*).

[38]    Roberts' Br. at 14.

[39]    18 Pa.C.S. § 4915.2(a)(1).

[40]    *Id.* § 4915.2(a)(2).

sexual offender's failure to appear or verify, but rather applies to all of the statutory components, including the language "as required under" either Section 9799.56 or Section 9799.60. When the *mens rea* is applied to every element of the statute, as the Crimes Code mandates, Roberts maintains that the statute requires proof that the offender knew what his obligations were before he may be convicted of failing to comply with those obligations. Roberts insists that to hold otherwise effectively would excise the "as required under" clauses and convert the crime into a strict liability offense.

This case arises out of Roberts' challenge to the sufficiency of the evidence offered by the Commonwealth to prove him guilty of both subsection (a)(1) and (a)(2) of the failure to comply statute. Challenges to the sufficiency of the evidence are governed by our familiar and well-established standard of review. We consider the evidence presented at trial *de novo*.[41] We are obliged to evaluate that evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth offered evidence sufficient to prove all of the elements of the crime at issue beyond a reasonable doubt.[42]

As a prerequisite to resolving Roberts' sufficiency challenge, we must understand the requirements of the failure to comply statute. The aim of statutory interpretation is to ascertain and to give effect to the General Assembly's intent.[43] The best indicators of that intent are the words that the legislature chose, so long as those words are "clear and free from all ambiguity."[44] "When the words of a statute have a plain and unambiguous

---

[41] *Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013).

[42] *Id.*

[43] 1 Pa.C.S. § 1921(a).

[44] *Id.* § 1921(b).

meaning,"[45] we are bound to apply them, as written, and we cannot disregard those words "under the pretext of pursuing [the statute's] spirit."[46] We are bound to "construe a statute's language so that effect is given to all its provisions, and so that no part will be inoperative or superfluous, void or insignificant."[47] Finally, because the failure to comply statute sets forth a criminal offense, the rule of lenity applies, which requires interpreting courts to construe penal statutes strictly.[48] Challenges to the sufficiency of the evidence and exercises in statutory interpretation both present questions of law,[49] over which our scope of review is plenary.[50]

We begin, as we do in all cases involving statutory interpretation, with the language of the statute. Entitled "Failure to comply with 42 Pa.C.S. Ch. 97 Subch. I registration requirements," Section 4915.2 provides, in pertinent part, as follows:

> **(a) Offense defined.**--An individual who is subject to registration under 42 Pa.C.S. § 9799.55(a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual *knowingly fails* to:

---

[45] *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1071 (Pa. 2018).

[46] 1 Pa.C.S. § 1921(b).

[47] *Ball v. Chapman*, 289 A.3d 1, 26-27 (Pa. 2023) (citations and internal quotation marks omitted); *see also* 1 Pa.C.S. § 1922(2) ("In ascertaining the intention of the General Assembly in the enactment of a statute," a court may presume "[t]hat the General Assembly intends the entire statute to be effective and certain.").

[48] *See* 1 Pa.C.S. § 1928(b)(1).

[49] *See Commonwealth v. Weston*, 749 A.2d 458, 462 (Pa. 2000) (noting that a challenge to the sufficiency of the evidence is a question of law); *U.S. Venture, Inc. v. Commonwealth Dep't of Cmty. and Econ. Dev.*, 255 A.3d 321, 334 (Pa. 2021) (explaining that questions of statutory interpretation are matters of law).

[50] *Sanchez*, 82 A.3d at 967; *U.S. Venture, Inc.*, 255 A.3d at 334.

(1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.56 (relating to registration procedures and applicability); [or]

(2) verify the individual's residence or be photographed as required under 42 Pa.C.S. § 9799.60 (relating to verification of residence).[51]

Each subsection of this statute contains two elements. The first element identifies the action that the sexual offender failed to perform. Subsection (a)(1) applies when a sexual offender "knowingly" fails to register, while subsection (a)(2) applies when a sexual offender "knowingly" fails to verify his or her residence or to be photographed. The second element lists the statutory sections that impose the registration and verification requirements. In other words, the statute includes both the action that the sexual offender was required to take and the statutory provision mandating that action. Thus, as to Subsection (a)(1), the latter portion of the subsection, "as required under 42 Pa.C.S. § 9799.56," identifies the provision of SORNA that requires the sexual offender to "register with the Pennsylvania State Police." Similarly, the latter portion of Subsection (a)(2), "as required under 42 Pa.C.S. § 9799.60," identifies the provision of SORNA that requires a sexual offender to "verify [his or her] residence or be photographed."

That the statute's *mens rea* term applies to the first element of each subsection is not in dispute. Undoubtedly, the Commonwealth must prove that a sexual offender knowingly failed to register or verify. The question presently before us is whether the *mens rea* also applies to the second elements of each subsection. We hold that it does.

When interpreting a statute, a court must avoid any construction of that statute that renders any statutory term "inoperative or superfluous, void or insignificant."[52] In holding that "the statute does not require proof that Roberts knew of his lifelong-registration

---

[51]    18 Pa.C.S. § 4915.2(a) (emphasis added).

[52]    *Ball*, 289 A.3d at 26-27 (footnote and internal quotation marks omitted).

requirement,"[53] the Superior Court violated this fundamental tenet. The panel effectively stopped reading subsection (a)(1) after "register with the Pennsylvania State Police," and subsection (a)(2) after "verify the individual's residence or be photographed." But, statutory interpretation requires that we do the opposite. Indeed, where possible, we must "give effect to all of [a statute's] provisions."[54] This is because "presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect."[55] Here, the only interpretation of the failure to comply statute that gives effect to all of its provision requires the Commonwealth to prove that the offender not only failed to register or verify, but also that the offender knew that he was required to do so.

The "as required under" language in the failure to comply statute identifies for the offender the particular conditions with which sexual offenders must comply. The statute provides notice to the offender of what he must do to avoid being charged with a felony: he must register or verify "as required under" the relevant statutory provisions. This purpose only can be fulfilled if the offender knows of his requirements "under 42 Pa.C.S. § 9799.56" or "under 42 Pa.C.S. § 9799.60." The statute cannot function without proof of both components. The offender must (1) be "required" to register or to verify and (2) he must fail to do so. Not requiring proof that the offender knew that he was "required under 42 Pa.C.S. § 9799.56" to register or was "required under 42 Pa.C.S. § 9799.60" to verify his or her residence would mean that the crime would be completed with nothing more the failure to register or verify, itself, regardless of whether that offender knew that he was required to do so. But, the failure to act is only one component of the statute. Were we

---

[53]    *Roberts*, 293 A.3d at 1225.

[54]    *Commonwealth v. McHugh*, 178 A.2d 556, 557 (Pa. 1962) (citation and internal quotation marks omitted).

[55]    *Id.* (citations and internal quotation marks omitted).

to hold, as the Superior Court did, that the Commonwealth does not have to prove that a sexual offender knew that he was required to register or verify, the "as required under" language would bear no meaning, and we effectively would be writing that language out of the statute, a result that is proscribed by our canons of interpretation. The only reasonable construction that gives effect to all of the statute's provisions is one that adheres to the plain language of the statute, which requires proof that the offender failed to register or verify as he was "required" to do "under 42 Pa.C.S. § 9799.56" or "under 42 Pa.C.S. § 9799.60."

The "General requirements of culpability" provision of our Crimes Code compels the same interpretation of this language. Section 302(a) unequivocally mandates that a the *mens rea* element of a criminal statute must be applied "to each material element of the offense."[56] As described above, the failure to comply statute requires the Commonwealth to prove two essential elements: (1) that the offender was required to register or verify; and (2) that the offender, in fact, failed to do so. The former supplies core information necessary for a conviction. That is, a person only can be convicted for failing to comply *if* that person is "required" to register or verify. Being indispensable to a conviction, we have no difficulty determining that the "as required under" element is "a material element of the offense."[57] As such, the statute's *mens rea*—knowingly—must apply to that element, and the Commonwealth must prove that an offender *knew* that, for purposes of Subsection (a)(1), he was "required under 42 Pa.C.S. § 9799.56" to register with the PSP, and *knew* that, for purposes of Subsection (a)(2), he was "required under 42 Pa.C.S. § 9799.60" to verify a residence or to be photographed.

---

[56] 18 Pa.C.S. § 302(a).

[57] *Id.*

The Superior Court cited Section 302 of the Crimes Code, but only for the definition of the term "knowingly." The panel did not acknowledge, let alone apply, Section 302(a)'s command that the *mens rea* requirement apply to every material element of a crime. This is no doubt because the Superior Court did not consider the latter half of Subsections (a)(1) and (2) to constitute elements of the crime, having found expressly that "the statute does not require proof that Roberts knew of his lifelong-registration requirement."[58] That conclusion and the Superior Court panel's derivative failure to correctly apply Section 302(a) were plain error.

For purposes of a criminal prosecution, a *mens rea* of "knowingly" requires that a person must be aware of the nature of his conduct, or be "practically certain" that his conduct will create a particular result.[59] Knowledge in this context necessarily entails a choice. The person must know of the potential consequences of his actions, and then nonetheless must choose to take the action anyway. The bedrock principles of our criminal law prohibit holding a person criminally liable for failing to do something that he did not know that he was required to do. To hold otherwise would be anomalous to those principles, absent unmistakable evidence that the General Assembly intended to criminalize such behavior. No such evidence exists in the failure to comply statute.

Despite the deficiencies in, and our disagreement with, the intermediate court's analysis, we nonetheless affirm the judgment of sentence, because the evidence presented at trial was more than sufficient to prove that Roberts possessed at all relevant times the requisite knowledge that he was subject to SORNA's terms and conditions for the remainder of his life.

---

[58] *Roberts*, 293 A.3d at 1225.

[59] 18 Pa.C.S. § 302(b)(2)(i)-(ii).

When a sexual offender is ordered to comply with SORNA (or one of its previous iterations), the PSP creates what is known as a "Megan's Law Packet."[60] The packet is a compendium of all of the certified records, "from the initial registration all of the way up until" the present date,[61] related to a sexual offender's reporting obligations and history.[62] The records in Roberts' "Megan's Law Packet" indicated that his duty to comply with SORNA commenced on January 24, 2006, and that he was required to register as a sexual offender and to obey all of the conditions associated therewith.[63]

The packet, which the Commonwealth admitted at trial, also contains Roberts' registration forms, which were completed and placed within the packet each time Roberts appeared in-person for his annual visits or to update his contact information. These forms instructed Roberts that, among other things, he was obliged to timely register and verify his personal information. After SORNA took over for Megan's Law as the governing statute, the form informed Roberts that he was classified under SORNA as a Tier III offender and that, as such, he was required to comply with SORNA's procedures for the remainder of his life. Finally, the form warned Roberts that any failure to comply with his mandatory duties as a sexual offender constitutes a separate felony offense.

Roberts signed the form each time that he appeared before the PSP, including no less than four times in 2019, the last year that he regularly registered. With each affixed signature, Roberts acknowledged that he had read and understood its contents, including

---

[60]     Notes of Testimony ("N.T."), 3/7/2022, at 14.

[61]     *Id.*

[62]     *Id.*

[63]     *Id.* at 15-16.

the repeated notations of his status as a lifetime obligor. The PSP provided Roberts with a copy of the signed form at the conclusion of each visit.[64]

Viewed in the light most favorable to the Commonwealth, this evidence was more than sufficient to prove, beyond a reasonable doubt, that Roberts knew that he was "required under 42 Pa.C.S. § 9799.56"[65] to register for life and that he was "required under 42 Pa.C.S. § 9799.60"[66] to verify his residence, and be photographed for life. He repeatedly signed a form that unequivocally informed him of these obligations, and that warned him that the failure to do so would result in a felony prosecution. Roberts' protestations notwithstanding, nothing in the record or in his "Megan's Law Packet" suggested that his SORNA obligations expired after ten years. To the contrary, nothing in the "whole packet from the initial registration form right up to the last registration form" indicated anything other than the fact that he was a lifetime reporter.[67]

We hold that, in order to convict a sexual offender under 18 Pa.C.S. § 49815.2(a)(1) or (a)(2), the Commonwealth must prove not only that the offender knowingly failed to register or verify, but also that the offender knew that he was required to do so. We also hold that the Commonwealth provided sufficient evidence to prove that Roberts had all of the requisite knowledge when he failed to register and failed to verify his address in 2020. Accordingly, we affirm the judgment of sentence.[68]

---

[64] *See id.* at 47-48.

[65] 18 Pa.C.S. § 4915.2(a)(1).

[66] 18 Pa.C.S. § 4915.2(a)(2).

[67] N.T. at 49-50.

[68] Roberts has filed with this Court a "Petition for Effective Substitution Counsel." Therein, Roberts alleges that his present attorney was ineffective for, among other things, failing to file a speedy trial motion pursuant to Pa.R.Crim.P. 600, allegedly selecting the jury without Roberts present, and failing to file a brief at some point before the trial court. Such ineffectiveness claims must be reserved for collateral proceedings under the Post (continued…)

Chief Justice Todd and Justices Donohue, Dougherty, Mundy, Brobson and McCaffery join the opinion.

---

Conviction Relief Act, 42 Pa.C.S. §§ 9541-46, and are not available on direct appeal. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Thus, we deny Roberts' petition without prejudice to raise the claims at the correct procedural juncture.